## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| S. BLAKE MURCHISON, Individually and<br>On Behalf of All Others Similarly Situated,<br><br>　　　　　　　Plaintiff,<br><br>　　vs.<br><br>GMAC LLC, T.K. DUGGAN,<br>DOUGLAS A. HIRSCH, ROBERT W.<br>SCULLY, LENARD B. TESSLER, MARK A.<br>NEPORENT, FRANK W. BRUNO, SETH P.<br>PLATTUS, RAY G. YOUNG, FREDERICK<br>A. HENDERSON, MARK R. LANEVE,<br>and WALTER G. BORST,<br><br>　　　　　　　Defendants. | C.A. No. 09-00169-SLR |

## REPLY MEMORANDUM IN SUPPORT
## OF GMAC LLC'S MOTION TO DISMISS

Robert J. Kopecky
Daniel E. Laytin
Jennifer W. Cowen
Rana Barakat
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL  60654
(312) 862-2000

Daniel A. Dreisbach (#2583)
dreisbach@rlf.com
Lisa A. Schmidt (#3019)
schmidt@rlf.com
Kelly E. Farnan (#4395)
farnan@rlf.com
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE  19801
(302) 651-7700

*Attorneys for Defendant GMAC LLC*

Dated:  September 25, 2009

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION .............................................................................................................1

ARGUMENT......................................................................................................................2

I.     The "No-Action" Clause In The Indenture Precludes Plaintiff From Bringing Any Claims In Connection With The SmartNotes Indenture. ...................................................2

II.    Count I Does Not State A Claim For Breach Of The SmartNotes Indenture. ....................4

        A.     A Third Party Guarantee Is Substantively Different From A Pledge Or Lien With Respect To The Obligor's Assets. .........................................................5

        B.     The Guarantees To Recipients Of The New Notes Were Separate Obligations Of GMAC Subsidiaries. ......................................................................7

        C.     The Offering Memorandum Does Not "Negate" Defendants' Argument. .............8

III.    Count II Does Not State A Claim For Breach Of The Covenant Of Good Faith And Fair Dealing.........................................................................................................9

IV.    Count III Does Not State A Claim For Violation Of The Trust Indenture Act. ...............11

        A.     Plaintiff's Reliance On *Mechala* Is Misplaced. ...................................................11

        B.     Plaintiff Does Not Allege Any Impairment Of His Right To Payment. ................14

V.    Counts IV And V Do Not State Viable Claims For Equitable Relief................................16

        A.     Count IV Does Not State A Claim For Equitable Rescission................................17

        B.     Count V Does Not State A Claim For Equitable Subordination. ..........................19

CONCLUSION.................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
129 S.Ct. 1937 (2009) ................................................................................................... 16

*AstenJohnson, Inc. v. Columbia Casualty Co.,*
562 F.3d 213 (3d Cir. 2009) ......................................................................................... 16

*Bank of New York Mellon v. Realogy Corp.,*
2008 WL 5259732 (Del. Ch. Dec. 18, 2008) ................................................................. 7

*Bell Atl. Corp v. Twombly,*
550 U.S. 544 (2007) ....................................................................................................... 16

*Bonham v. Coe,*
292 N.Y.S. 423 (N.Y. App. Div. 1937) ......................................................................... 16

*C3 Media & Mktg. Group, LLC v. Firstgate Internet, Inc.,*
419 F. Supp. 2d 419 (S.D.N.Y. 2005) ........................................................................... 18

*Callanan v. Powers,*
92 N.E. 747 (N.Y. 1910) ................................................................................................ 17

*Citicorp Venture Capital, Ltd. v. Committee of Creditors Holding Unsecured Claims,*
160 F.3d 982 (3d Cir. 1998) ......................................................................................... 19

*Consolidated Rock Prods. Co. v. Du Bois,*
312 U.S. 510 (1941) ......................................................................................................... 8

*Cruden v. Bank of New York,*
957 F.2d 961 (2d Cir. 1992) ..................................................................................... 3, 4

*Federated Strategic Income Fund v. Mechala Group Jamaica Ltd.,*
1999 WL 993648 (S.D.N.Y. Nov. 2, 1999) ................................... 11, 12, 13, 14

*Fehr Bros. v. Scheinman,*
509 N.Y.S.2d 304 (N.Y. App. Div. 1986) ....................................................................... 8

*Feldbaum v. McCrory Corp.,*
1992 WL 119095 (Del. Ch. June 2, 1992). ..................................................................... 2

*Glass v. Kemper Corp.,*
949 F. Supp. 1341 (N.D. Ill. 1997) ............................................................................... 16

*Goldblatt v. Englander Commc'n, LLC,*
2007 WL 148699 (S.D.N.Y. Jan. 22, 2007) ................................................................. 11

ii

*In re Adelphia Commc'n Corp.*,
  2007 WL 2403553
  (Bankr. S.D.N.Y. Aug. 17, 2007) ................................................................. 11

*In re Northwestern Corp.*,
  313 B.R. 595 (Bankr. D. Del. 2004) ............................................................. 14

*In re Oakwood Homes Corp.*,
  2004 WL 2126514
  (Bankr. D. Del. Sept. 22, 2004) ...................................................................... 4

*In re Poughkeepsie Hotel Assocs. Joint Venture*,
  132 B.R. 287 (Bankr. S.D.N.Y. 1991) .......................................................... 19

*In re Submicron Sys. Corp.*,
  291 B.R. 314 (Bankr. D. Del. 2003) .............................................................. 19

*JP Morgan Chase Bank, N.A. v. IDW Group, LLC*,
  2009 WL 321222 (S.D.N.Y. Feb. 9, 2009) .................................................... 11

*Kroblin Refrigerated Xpress, Inc. v. Pitterich*,
  805 F.2d 96 (3d Cir. 1986) .............................................................................. 3

*Lorenz v. CSX Corp.*,
  1 F.3d 1406 (3d Cir. 1993) ....................................................................... 10, 11

*New Shows, S.A. deC.V. v. Don King Prods., Inc.*,
  210 F.3d 355, 2000 WL 354214 (2d Cir. Apr. 6, 2000) ............................... 18

*New York City Dep't of Finance v. Twin Rivers, Inc.*,
  920 F. Supp. 50 (S.D.N.Y. 1996) .................................................................... 8

*Oaktree Capital Mgmt., LLC v. Spectrasite Holdings, Inc.*,
  2002 WL 32173072 (D. Del. June 25, 2002) ................................................ 14

*Parker & Waichman v. Napoli*,
  815 N.Y.S.2d 71 (N.Y. App. Div. 2006) ...................................................... 17

*Peak Partners, LP v. Republic Bank*,
  191 F. App'x 118 (3d Cir. 2006) ..................................................................... 3

*Romanoff v. Superior Career Inst., Inc.*,
  415 N.Y.S.2d 457 (N.Y. App. Div. 1979) .................................................... 17

*Rosewood Apartments Corp. v. Perpignano*,
  200 F. Supp. 2d 269 (S.D.N.Y. 2002) ..................................................... 17, 18

*Sharon Steel Corp. v. Chase Manhattan Bank, N.A.*,
  88 F.R.D. 38 (S.D.N.Y. 1980) ......................................................................... 3

*Strategic Growth Int'l, Inc. v. RemoteMDx, Inc.*,
   2008 WL 4179235 (S.D.N.Y. Sept. 10, 2008) ................................................................. 18

*Superintendent of Ins. v. Chase Manhattan Bank*,
   840 N.Y.S.2d 479 (N.Y. App. Div. 2007) ...................................................................... 6

*Terwilliger v. Terwilliger*,
   206 F.3d 240 (2d Cir. 2000) ...................................................................................... 5, 15

*UPIC & Co. v. Kinder-Care Learning Ctrs., Inc.*,
   793 F. Supp. 448 (S.D.N.Y. 1992) .............................................................................. 14

*Waldman v. Riedinger*,
   423 F.3d 145 (2d Cir. 2005) ......................................................................................... 3

*Wing Ming Properties (U.S.A.) Ltd. v. Mott Operating Corp.*,
   568 N.Y.S.2d 605 (N.Y. App. Div. 1991) ...................................................................... 3

*Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*,
   341 F. Supp. 2d 258 (S.D.N.Y. 2004) .......................................................................... 10

**Other Authorities**

Black's Law Dictionary
   (8th ed. 2004) ............................................................................................................ 6

## INTRODUCTION

Plaintiff's opposition provides no plausible basis for any of his claims. Plaintiff misstates both the facts shown on the face of the documents before the Court and the arguments GMAC makes in support of its motion to dismiss. Moreover, plaintiff does not dispute the authorities GMAC cites in support of its arguments or attempt to distinguish those authorities in any way. Instead, plaintiff cites decisions that (a) do not address the legal issues raised by GMAC's motion, (b) have been superseded by far more recent authority cited by GMAC, or (c) are so distinguishable factually that they are irrelevant to GMAC's arguments for dismissal.

Plaintiff takes GMAC to task for relying on GMAC's Form 8-K describing the terms of the Exchange Offer, rather than the Offering Memorandum for the new notes. (Pl. Br., D.I. 75, at 4, 13) But *plaintiff* chose to quote the Form 8-K (D.I. 65, ¶¶ 46, 48) and attach it as an exhibit to his Complaint (D.I. 65-2). Plaintiff neither quoted the Offering Memorandum nor attached it as an exhibit. The only reference to the Offering Memorandum in the Complaint is plaintiff's allegation that the term "qualified buyers" was defined in "the private offering memorandum that was not filed with the SEC." (D.I. 65, ¶ 47) GMAC relied on the Form 8-K because that was the relevant document plaintiff attached to his Complaint.

GMAC welcomes the Court's consideration of the Offering Memorandum, however, because it unambiguously shows that (1) the new notes are "equal in right of payment with all existing and future unsubordinated unsecured indebtedness of GMAC" (Brennecke Decl. Ex. A, D.I. 75-3, at 62), and (2) the new notes are "not secured by any of our [*i.e.*, GMAC's] assets" (*id.* at 32). Thus, the Offering Memorandum squarely refutes plaintiff's key arguments that the new notes would have priority over the SmartNotes in the event of a GMAC bankruptcy and that the new notes were impermissibly secured by a lien on GMAC's assets.

**ARGUMENT**

I.    **The "No-Action" Clause In The Indenture Precludes Plaintiff From Bringing Any Claims In Connection With The SmartNotes Indenture.**

The no-action clause in Section 6.04 bars all SmartNotes holders, including plaintiff, from asserting claims in connection with the SmartNotes Indenture without first satisfying four requirements. (*See* GMAC Br., D.I. 70 9-10)  Plaintiff raises five arguments to avoid application of Section 6.04, but none has any merit.

*First*, plaintiff seeks to avoid the no-action clause in Section 6.04 by pointing to language in that section stating that noteholders may not use any provisions of the Indenture "to affect, disturb or prejudice the rights of any other holder of Notes," or enforce any right under the Indenture other than for the "common benefit of all holders of Notes." (Pl. Br., D.I. 75, at 7-8; Def. Ex. B, D.I. 71-2, § 6.04)  This language does not, as plaintiff asserts, create an "exception" to the no-action clause.  To the contrary, the passage plaintiff quotes reinforces the purpose of the no-action provision in Section 6.04 – to "protect against the exercise of poor judgment by a single bondholder … who might otherwise bring a suit against the issuer that most bondholders would consider not to be in their collective economic interest." *Feldbaum v. McCrory Corp.*, 1992 WL 119095, at *6 (Del. Ch. June 2, 1992).

*Second*, plaintiff quotes part of the final paragraph in Section 6.04, which does create a narrow exception to the notice requirement for actions to recover amounts due under the notes. (D.I. 75 at 8)  Contrary to plaintiff's assertion, GMAC acknowledged this exception in its opening brief (D.I. 70 at 5), and it does not undermine GMAC's motion based on the no-action clause.  Plaintiff omits the key language in that sentence referring to the right to receive payment on the Notes "*on or after the respective due dates expressed in such Note*," which makes clear that the right "to institute suit for the enforcement of such payment on or after such respective dates" refers to suits filed *after* GMAC defaults on any principal or interest payments when due.

2

(Def. Ex. B, D.I. 71-2, § 6.04 (emphasis added))   Construing a virtually identical no-action provision, one of the cases cited by plaintiff explained that this exception gives bondholders a "right to institute suit *after* nonpayment of principal or interest." *Cruden v. Bank of New York*, 957 F.2d 961, 968 (2d Cir. 1992). Here, plaintiff does not allege GMAC has defaulted on any payments due on his SmartNotes "on or after the respective due dates" in such notes.

      ***Third***, plaintiff argues that, "to the extent there would be any ambiguity" in the notice requirement of Section 6.04, this issue cannot be resolved on a motion to dismiss. (D.I. 75 at 8) But he identifies no such ambiguity. Nor could he, because the no-action provision is clear and unambiguous.[1] Plaintiff does not dispute that his claims in Counts I, II, IV and V are brought "with respect to this Indenture." Nor does plaintiff dispute that he has not satisfied the clear procedural prerequisites to suit in Section 6.04. Finally, as discussed above, the exception for actions brought to enforce payment on bonds *after* they come due is unambiguously inapplicable here. Plaintiff's argument ignores the numerous cases cited in GMAC's brief (D.I. 70 at 10) in which courts have dismissed actions for breach of bond indentures based on similar no-action clauses. *See, e.g., Peak Partners, LP v. Republic Bank*, 191 F. App'x 118, 126-27 (3d Cir. 2006).

      ***Fourth***, there is no legal basis for plaintiff's assertion that compliance with Section 6.04 is excused because "any presuit notice would have had and will have no effect on

---

[1]   Whether the relevant contract language is ambiguous is a question of law for the Court. *E.g., Waldman v. Riedinger*, 423 F.3d 145, 149 (2d Cir. 2005) (applying New York law); *Kroblin Refrigerated Xpress, Inc. v. Pitterich*, 805 F.2d 96, 101 (3d Cir. 1986). The cases plaintiff cites on this issue have no bearing on whether the no-action clause here is ambiguous. *See, e.g., Wing Ming Properties (U.S.A.) Ltd. v. Mott Operating Corp.*, 568 N.Y.S.2d 605, 606 (N.Y. App. Div. 1991) (finding ambiguity in lease indenture provision conveying the "volume of space" of the subject property above a certain elevation); *Sharon Steel Corp. v. Chase Manhattan Bank, N.A.*, 88 F.R.D. 38, 43 (S.D.N.Y. 1980) (finding ambiguity in provision for successor liability in the event debtor sold "all or substantially all" of its assets).

the Defendants." (D.I. 75 at 9)  Section 6.04 does not require notice on GMAC or the other defendants – it requires notice on the independent trustee of the bonds.  What effect the notice will have on the defendants is irrelevant.  While a no-action clause requiring pre-suit demand on a bond trustee may be excused where the suit is brought *against the trustee itself, e.g., Cruden*, 957 F.2d at 968; *In re Oakwood Homes Corp.*, 2004 WL 2126514, at *3 (Bankr. D. Del. Sept. 22, 2004), plaintiff has not sued the SmartNotes Trustee, and this exception provides no support for his claim.

> ***Finally***, plaintiff attacks a straw man by arguing that the no-action clause cannot prevent him from suing under the Trust Indenture Act ("TIA").  (D.I. 75 at 9-10)  As plaintiff himself recognizes in the opening paragraph of this argument (*id.* at 7), GMAC is *not* relying on the no-action clause to dismiss plaintiff's TIA claim in Count III.  Accordingly, plaintiff's argument is moot, and the authorities he cites on this point are irrelevant.

## II.   Count I Does Not State A Claim For Breach Of The SmartNotes Indenture.

> Plaintiff has abandoned two of the three grounds for his claim that GMAC breached the SmartNotes Indenture.  Thus, he does not defend his allegations that the Exchange Offer violated Section 6.01 of the Indenture because "GMAC generally is not paying its debts" (D.I. 65, ¶ 83), or that the Exchange Offer reduced the rate of or extended the time for payment of interest on the notes, or reduced the principal or changed the stated maturity of the notes, in contravention of Section 10.02.  (*Id.* ¶ 84)  As GMAC explained in its opening brief, these concessions are compelled by the plain language of the Indenture.

> Plaintiff now relies exclusively on Section 12.01.  But this provision similarly provides no basis for his breach-of-contract claim.  Section 12.01 states in relevant part that "the Company will not at any time pledge or otherwise subject to any lien any of its property or assets." (Pl. Br., D.I. 75, at 10-11)  The Indenture defines the "Company" as GMAC.  (D.I. 65,

§ 1.01)  On their face, the allegations of the Complaint and the documents it incorporates establish that the new notes were not secured by any pledge or lien of GMAC's assets.  Rather, GMAC's subsidiaries provided guarantees, which are separate contractual obligations of these subsidiaries.  These facts, which plaintiff cannot dispute, dispose of plaintiff's claim as a matter of law.  None of the arguments in plaintiff's opposition supports a contrary conclusion.

### A.    A Third Party Guarantee Is Substantively Different From A Pledge Or Lien With Respect To The Obligor's Assets.

The Exchange Offer does not violate Section 12.01 because plaintiff does not and cannot allege that GMAC pledged or subjected to any lien "any of its property or assets." Instead, Exchange Offer participants received new unsecured GMAC notes, along with contractual guarantees provided by certain GMAC subsidiaries.  While plaintiff characterizes GMAC's argument on this point as a "semantic gambit" (D.I. 75 at 4, 12), he ignores the substantive difference between a pledge or lien on GMAC's assets and a contractual guarantee.

As the Restatement of Security explains, pledges and liens provide a "privilege of retention" in the debtor's property.  Restatement (First) of Security § 1 cmt. a (1941).  Such an interpretation comports with Section 12.01, in which both "pledge" and "lien" refer to GMAC's "property or assets."  (Def. Ex. B, D.I. 71-2, § 12.01)  A guarantee, on the other hand, is simply "an obligation to answer for the debt of another." *Terwilliger v. Terwilliger*, 206 F.3d 240, 246 (2d Cir. 2000) (citing authorities applying New York law).  The difference is not merely "semantic."  A lien or pledge gives the holder a claim to the assets of the debtor ahead of unsecured creditors, while a third-party contractual guarantee gives the holder no right to the assets of either the debtor or the guarantor.  None of plaintiff's arguments refutes this distinction.

*First*, there is no basis for plaintiff's assertion that the guarantees provided in the Exchange Offer violated Section 12.01 "because in other contexts the term 'guarantee' is synonymous with the terms 'pledge' and 'lien.'"  (D.I. 75 at 17)  Plaintiff points to the third

definition of "guarantee" as a noun in Black's Law Dictionary: "something given or existing as security." (*Id.*) A guarantee is, indeed, a form of security – the security afforded by a third party's contractual promise to pay for another's obligation. But Section 12.01 does not prohibit security generally. It only prohibits a specific type of security: a "pledge" or a "lien." The full definitions of "guarantee" in Black's – both as noun and verb – make clear that a guarantee is an ancillary contract relating to the performance of a primary obligation by another, *not* the granting of an interest in any of the obligated party's assets or property.[2]  Similarly baseless is plaintiff's reliance on an isolated sentence in *Superintendent of Insurance v. Chase Manhattan Bank*, 840 N.Y.S.2d 479 (N.Y. App. Div. 2007), for the proposition that the definitions of pledge, lien, and guarantee "overlap in this case." (D.I. 75 at 17)  The opinion noted in passing that certain notes involved in that case "were secured by stock pledges and other guarantees," 840 N.Y.S.2d at 481, but the court did not state that a contractual guarantees were substantively indistinguishable from a pledge of assets.

  ***Second***, plaintiff asserts that "the Indenture requires construction of the contract in accordance with the definitions" in the Trust Indenture Act, and the Act "broadly lumps all debt obligations under one concept of an 'obligor.'" (D.I. 75 at 17 & n.3)  The Indenture contains no such requirement.  Plaintiff may be referring to Section 15.06, which states that provisions of the Indenture included by operation of the TIA control over any other conflicting provisions of the Indenture. (*See* Def. Ex. B., D.I. 71-2, § 15.06)  Plaintiff does not argue,

---

[2]  Black's also defines a "negative-pledge clause" in a bond indenture as a provision "stating that the issuing entity will not pledge *its assets* if it will result in less security to the bondholders under the indenture agreement."  Black's Law Dictionary (8th ed. 2004) (emphasis added).  This definition further refutes plaintiff's argument that "common sense" dictates reading Section 12.01 to cover third-party guarantees that do not encumber GMAC's assets. (*See* D.I. 75 at 17)

however, that the negative-pledge clause in Section 12.01 conflicts with any TIA-mandated provision of the Indenture. Nor is the TIA's definition of "obligor" relevant to whether a guarantee is equivalent to a pledge or lien prohibited by the negative-pledge clause. Nothing in the TIA provides that guarantees are synonymous with pledges of assets or property.

*Third*, the decision in *Bank of New York Mellon v. Realogy Corp.*, 2008 WL 5259732 (Del. Ch. Dec. 18, 2008), provides no support for plaintiff's attack on the Exchange Offer. In *Realogy,* there was no dispute that the exchange offer provided participants with new debt "secured by a second lien" on the issuer's assets. *Id.* at *1. As plaintiff himself notes, the issue before the court was whether this new lien was a "Permitted Lien" under the relevant indenture. *Id.* That, in turn, depended on whether the proposed new debt satisfied the definition of "Permitted Refinancing Indebtedness" in a Credit Agreement between Realogy and JP Morgan Chase. *Id.* at *1-2. The case did *not* involve any guarantees provided to participants in the exchange, did *not* require the court to consider the definition of guarantee, and did *not* "equate" a guarantee with a lien, pledge or any other form of security.[3]

### B.     The Guarantees To Recipients Of The New Notes Were Separate Obligations Of GMAC Subsidiaries.

Plaintiff goes to great pains arguing that GMAC "is obliged for the debt of the new notes." (D.I. 75 at 19) But GMAC has never disputed that it is the issuer of the new notes received by participants in the Exchange Offer, and is therefore the primary obligor on those notes. Thus, plaintiff mischaracterizes GMAC's argument by asserting that GMAC is attempting to "disclaim any responsibility for the New Notes." (*Id.* at 20) Section 12.01 does not prohibit

---

[3]   Indeed, the word "guarantee" appears only in the court's quotation of one provision in the Credit Agreement that, among other things, expressly limited refinancing of debt that provided "greater guarantees" than the prior debt. *Id.* at *9. That limitation was not at issue in the case, and, in any event, the SmartNotes Indenture contains no comparable restriction.

GMAC from issuing any new debt; it only prohibits the issuance of new debt secured by pledges of or liens on the assets or property of GMAC.  GMAC did not violate the Indenture when it issued the new notes in the Exchange Offer because it did not provide recipients of these notes any greater claim on its assets than holders of SmartNotes.

As confirmed by the Offering Memorandum (D.I. 75-3 at 2-3), the guarantees provided to participants in the Exchange Offer were issued by GMAC's subsidiaries, not by GMAC.  This provides an independent ground for dismissal because the negative-pledge covenant in Section 12.01 applies only to GMAC.  Plaintiff ignores all of the case law cited by GMAC on this point establishing that the guarantees issued by GMAC's subsidiaries are "separate, independent" obligations between the guarantors and the holders of the new notes. *Fehr Bros. v. Scheinman*, 509 N.Y.S.2d 304, 305-06 (N.Y. App. Div. 1986).  *See also New York City Dep't of Finance v. Twin Rivers, Inc.*, 920 F. Supp. 50, 52 (S.D.N.Y. 1996) (guarantee is a "collateral promise to answer for the payment of a debt or obligation of another").[4]

### C.    The Offering Memorandum Does Not "Negate" Defendants' Argument.

After quoting various passages from the Offering Memorandum (D.I. 75 at 13-15), plaintiff argues that "the Offering Memorandum flatly negates GMAC's contentions and, at the very least, raises a disputed issue of fact" (*id.* at 15).  Contrary to this unsupported assertion, *none* of the quoted passages, or any of the other provisions in the Offering Memorandum,

---

[4]    Plaintiff does not explain his assertion (D.I. 75 at 20) that the "Exchange Offer mimics the precise scenario" in *Consolidated Rock Prods. Co. v. Du Bois*, 312 U.S. 510, 523-34 (1941), and that decision has no bearing on this case.  In *Consolidated Rock Products*, the Supreme Court struck down a bankruptcy reorganization plan as inequitable to holders of debt issued by subsidiaries of a bankrupt holding company.  The Court ruled that such bondholders should be allowed to pierce the corporate veil and reach the assets of the holding company because it had treated the properties of the subsidiaries as its own.  *Id.* at 524.  Neither the factual scenario nor plaintiff's claim is comparable here.

contradicts either the description of the Exchange Offer in GMAC's November 2008 Form 8-K or GMAC's arguments in its opening brief. Indeed, the Offering Memorandum states unequivocally that the new notes issued in the Exchange Offer "*will be equal in right of payment with all existing and future unsubordinated unsecured indebtedness of GMAC.*" (D.I. 75-3 at 62 (emphasis added)) GMAC's existing unsubordinated and unsecured debt includes the SmartNotes. (D.I. 65, ¶ 4) Moreover, plaintiff ignores the statement elsewhere in the Offering Memorandum that the "new guaranteed notes *are not secured by any of our assets.*" (D.I. 75-3 at 32 (emphasis added)) The Offering Memorandum does not create a "disputed issue of fact"; it unambiguously refutes plaintiff's claim that the Exchange Offer violated Section 12.01.

The Offering Memorandum also belies plaintiff's assertion that the Exchange Offer is contrary to the description of the SmartNotes in the Form S-3 registration statement for the notes. (D.I. 75 at 2, 11) As alleged in the Complaint, the registration statement said that the SmartNotes "will rank equally and ratably with all our other unsecured and unsubordinated indebtedness." (D.I. 65, ¶ 44) The Offering Memorandum makes clear that the new notes rank "equally and ratably" with all of GMAC's other unsecured and unsubordinated indebtedness, including the SmartNotes. The statement plaintiffs quote from the Form S-3 thus remains accurate after consummation of the Exchange Offer.

## III.   Count II Does Not State A Claim For Breach Of The Covenant Of Good Faith And Fair Dealing.

The Third Circuit has held that the implied covenant of good faith and fair dealing "cannot be used to insert new terms that were not bargained for." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1415 (3d Cir. 1993). As the *Lorenz* decision explains, a plaintiff must point to "a right or benefit specifically provided to them in the indenture" in order to state a claim for breach of the implied covenant. *Id.* Plaintiff's brief ignores *Lorenz*, and his claim fails to meet this standard. Plaintiff's opposition implies that his claim for breach of the covenant is based on the allegedly

9

"arbitrary" decision by GMAC not to allow Smart Note holders to participate in the Bond Exchange. (D.I. 75 at 24 (quoting FAC, D.I. 65, ¶ 89)) But because plaintiff cites no provision of the Indenture that precludes GMAC from making exchange offers only to certain classes of bondholders, such alleged discrimination is not actionable.

Plaintiff tries to save his implied covenant claim by asserting in the alternative that it is permissibly duplicative of his claim in Count I for breach of the Indenture. (D.I. 75 at 21-23) Thus, he asserts that the amended complaint identifies the provisions of the Indenture that are violated by the Exchange Offer – they are the same provisions that form the basis of his breach of Indenture claim. (*Id.* at 21) Citing one case, *Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*, 341 F. Supp. 2d 258, 272 (S.D.N.Y. 2004), plaintiff argues that he should be allowed under Rule 8 to proceed with both, identical claims in the alternative. (D.I. 75 at 23-24) But now that plaintiff has made clear that his breach of the covenant claim is based on an alleged unfettered right to participate in all bond exchanges, not alleged improper subordination, those provisions are irrelevant. In any event, another court in the same district subsequently explained that the point for which plaintiff cites *Xpedior* is not good law.

> *Xpedior* is thin in its support for what it said, and numerous cases in this district have held the opposite: a claim for breach of the implied covenant of good faith and fair dealing based on the same facts as a breach of contract claim asserted in the same complaint is redundant and must be dismissed on a motion to dismiss.

*JP Morgan Chase Bank, N.A. v. IDW Group, LLC*, 2009 WL 321222, at *6 (S.D.N.Y. Feb. 9, 2009).[5] Thus, as *JP Morgan Chase* and numerous other decisions have held, the better view is to

---

[5] As plaintiff points out, the *JP Morgan Chase Bank* court declined to dismiss a breach of a covenant claim that was not duplicative of a breach of contract claim (it dismissed one that it concluded was duplicative). *See id.* at *5-*7. There, unlike here however, the implied obligation was "so interwoven in the whole writing of the contract as to be necessary for the effectuation of the purposes of the contract." *Id.* at *7 (internal quotation marks and brackets
(Continued...)

dismiss duplicative breach of the covenant claims. *See, e.g.*, *In re Adelphia Commc'n Corp.*, 2007 WL 2403553, at *7 (Bankr. S.D.N.Y. Aug. 17, 2007); *Goldblatt v. Englander Commc'n, LLC*, 2007 WL 148699, at *5 (S.D.N.Y. Jan. 22, 2007).

Whether or not Count II is duplicative of Count I, it should be dismissed. To the extent that plaintiff is relying on the Court to read into the Indenture a provision that would require GMAC to make any exchange offer available to Smart Note holders, it runs afoul of *Lorenz*. If it is duplicative of the breach of contract claim, it should be dismissed for that reason based on the overwhelming weight of precedent.

## IV.     Count III Does Not State A Claim For Violation Of The Trust Indenture Act.

Plaintiff's Answering Brief, like the Complaint, does not articulate a plausible theory of how the Exchange Offer impaired his legal right to payment under the Smart Notes and thus violated the TIA. The crux of plaintiff's argument is that this case is "on all fours" with *Federated Strategic Income Fund v. Mechala Group Jamaica Ltd.*, 1999 WL 993648 (S.D.N.Y. Nov. 2, 1999), which upheld a claim that a corporate restructuring violated the TIA. Even a cursory review of *Mechala*, however, reveals a set of facts wholly distinguishable from those alleged here. In the end, *Mechala* does nothing to save what the rest of plaintiff's brief only confirms to be a baseless theory of liability that fails as a matter of law.

### A.     Plaintiff's Reliance On *Mechala* Is Misplaced.

Plaintiff's assertion that *Mechala* involved "indistinguishable facts" (D.I. 75 at 25) is contradicted by a plain reading of Judge Baer's decision and, for that matter, by plaintiff's

---

omitted). Plaintiff cannot argue here that the purpose of the Smart Note Indenture – to provide the terms on which GMAC would re-pay holders principal and pay interest – could not be effectuated without a provision that would allow Smart Note holders to participate in all bond exchanges.

own summary of the case. The court in *Mechala* focused on three central facts to uphold the plaintiff's claim: defendants (1) altered the terms of plaintiff's bonds by stripping restrictive covenants provided in the indenture; (2) transferred all the assets of the defendant-issuer to its corporate affiliates; and (3) eliminated all existing guarantees to bondholders. *Mechala*, 1999 WL 993648, at *6-7. None of those things occurred in connection with the Exchange Offer here. If anything, the starkly contrasting facts of *Mechala* only reinforce why plaintiff's allegations here do not state a TIA claim.

    *First*, as plaintiff's own quotation from the decision makes clear, the exchange offer in *Mechala* involved "stripping certain restrictive covenants in the indentures, such as maintaining an agent for service in New York, jurisdictional provisions, waiver of immunities, and events of default." (D.I. 75 at 27 (quoting *Mechala*, 1996 WL 9933648, at *6)) The Exchange Offer also eliminated the defendant company's "obligation to maintain its own corporate existence" and removed restrictions on certain transactions with affiliates. 1999 WL 993648, at *6. As plaintiff here recognizes, the fact that the exchange offer involved a stripping of these restrictive covenants was "[i]mportant to Judge Baer." (D.I. 75 at 34) In contrast, the Complaint in this case does not allege that GMAC's Exchange Offer made *any* changes to the indenture that governed plaintiff's SmartNotes or the terms of the notes themselves, much less substantive changes like those in *Mechala*.

    *Second*, the amendments involved in the *Mechala* exchange offer would have allowed the issuer of the bonds to "voluntarily divest itself of its assets," leaving it as a "holding company with nominal assets." 1999 WL 993648, at *6. As the court noted, the divestiture of defendant's assets meant there would be "no meaningful recourse for plaintiffs or any noteholder who concludes this is a bad deal and chooses not to tender their notes, but rather to wait and sue for payment upon maturity." *Id.* In contrast, the Exchange Offer here involved no reduction of

GMAC's assets (and plaintiffs do not allege otherwise); to the contrary, the Exchange Offer enabled GMAC to get an influx of new capital from the federal government. (*See* GMAC Br., D.I. 70, at 25 (citing FAC, D.I. 65, Ex. B); *see also* D.I. 71-3, Ex. F)

*Finally*, the notes held by the plaintiff in *Mechala* had been secured by guarantees, but the exchange offer would have eliminated those guarantees, meaning that each of the existing guarantors would be "released and unconditionally discharged from its obligations under the Guarantee." 1999 WL 993648, at *7. As the court observed, "[b]y defendant's elimination of the guarantors and the simultaneous disposition of all meaningful assets, defendant will effectively eliminate plaintiffs' ability to recover and will remove a holder's 'safety net' of a guarantor, which was obviously an investment consideration from the outset." *Id.* at *7. Here the Exchange Offer did not eliminate or change any existing guarantees protecting holders of the Smart Notes. Unlike in *Mechala*, plaintiff here does not allege that the Exchange Offer removed or adversely affected any "safety net" on which holders of Smart Notes had been relying when they invested.

In sum, as plaintiff's own quotations from the court's decision highlight, the egregious facts that supported the court's ruling in *Mechala* are absent from this case. Thus, plaintiff explains that the rights of bondholders in *Mechala* were impaired because "[a] holder who chooses to sue for payment at the date of maturity will no longer, as a practical matter, be able to seek recourse from either the *assetless defendant* or from the *discharged guarantors*." (D.I. 75 at 27 (emphasis added) (quoting *Mechala*, 1999 WL 993648, at *7)) Here, in marked contrast to *Mechala*, the Exchange Offer did not (1) strip any covenants from the SmartNotes,

(2) dispose of GMAC's assets, or (3) discharge any guarantors of the SmartNotes.  As a result,

neither the holding nor the reasoning of *Mechala* supports plaintiff's TIA claim.[6]

### B.    Plaintiff Does Not Allege Any Impairment Of His Right To Payment.

After devoting the bulk of his argument to the inapposite *Mechala* decision,

plaintiff does nothing to refute GMAC's fundamental point that the Complaint does not allege

any legally cognizable impairment of his right to payment under the SmartNotes.  Plaintiff does

not address the authority cited in GMAC's opening brief explaining that Section 316(b) of the

TIA only prohibits actions that impair a bondholder's *legal* right to payment or change one of the

"core terms" of the indenture governing a bondholder's right to payment of principal and interest

when due.  *See In re Northwestern Corp.*, 313 B.R. 595, 600 (Bankr. D. Del. 2004); *UPIC & Co.*

*v. Kinder-Care Learning Ctrs., Inc.*, 793 F. Supp. 448, 452 (S.D.N.Y. 1992).  Plaintiff does not

argue that the Exchange Offer altered his legal right to payment or changed any of the core terms

of the SmartNotes.

Nor has plaintiff shown how any well-pleaded facts establish that the Exchange

Offer impaired his right to payment on the SmartNotes as a practical matter.  As GMAC noted in

its opening brief, plaintiff's theory about the "substantial likelihood" of a "liquidation process" in

which plaintiff's notes would "not be redeemed" is unsupported by the factual allegations in the

Complaint or the documents plaintiff invokes.  (D.I. 70 at 19-21)  Plaintiff's opposition brief

---

[6]    Plaintiff's reliance on *Oaktree Capital Management, LLC v. Spectrasite Holdings, Inc.*, 2002 WL 32173072 (D. Del. June 25, 2002), is similarly misplaced.  In *Spectrasite*, plaintiffs contended that the defendant holding company intended to dispose of substantially all of its assets through a corporate restructuring, in violation of an indenture provision prohibiting such a disposition.  *Id.* at *3.  They also alleged that this restructuring would impair their right to receive payment on existing notes because defendant was issuing new notes that would be paid first.  *Id.* at *4.  Here, GMAC has not disposed of substantially all its assets and the new notes issued in the Exchange Offer are not entitled to payment before the SmartNotes.

does nothing to advance the plausibility of either of the central premises of plaintiff's theory: (1) that SmartNotes now have a lower-priority claim on GMAC's assets than they did before the Exchange Offer; or (2) that GMAC is on the "brink" of bankruptcy.

The documents plaintiff has incorporated by reference, in particular the Offering Memorandum attached to his opposition, make evident that the new notes have no "priority" over GMAC's existing unsecured unsubordinated debt and have no greater claim to GMAC's assets than the SmartNotes. (*See* D.I. 75-3 at 20, 32, 62) In the face of these materials, which plaintiffs acknowledge the Court may consider in deciding this motion, plaintiff's reliance on a statement attributed to a GMAC employee that the SmartNotes would be "subordinated" to the new notes does not provide a viable basis for his claim. (*See* Pl. Br., D.I. 75, 29) Even accepting for purposes of this motion that such a statement was made, it cannot change the terms set forth in the Offering Memorandum, which plaintiff acknowledges is "the document that actually defines the nature of the security underlying the New Notes." (D.I. 75 at 11) Nothing in the Offering Memorandum says that existing SmartNotes would be subordinated to any new notes issued in the Exchange Offer. To the contrary, it states clearly that the "new guaranteed notes will be equal in right of payment with all existing and future unsubordinated unsecured indebtedness of GMAC." (D.I. 75-3 at 62)[7]

---

[7]  Nor can this quoted statement alter the legal status of a guarantee as a separate, independent obligation between a third-party guarantor and bondholder. *See, e.g., Terwilliger*, 206 F.3d at 246. Statements by a party do not constitute binding admissions when they characterize the contents of a controlling document or are conclusions of law, rather than statements of fact. *See, e.g., AstenJohnson, Inc. v. Columbia Casualty Co.*, 562 F.3d 213, 229 n.9 (3d Cir. 2009) (witness statement about terms of contract was not a factual admission); *Glass v. Kemper Corp.*, 949 F. Supp. 1341, 1345 (N.D. Ill. 1997) (statement regarding existence of one party's obligation to another was inadmissible conclusion of law, not party admission).

Plaintiff's brief also makes no attempt to support the conclusory and speculative allegation that a GMAC bankruptcy is "imminent" – the other key factual predicate for his theory of impairment.   Plaintiff attacks GMAC's citation to the fact that the market price of plaintiff's SmartNotes has risen substantially since the Exchange Offer was completed (D.I. 75 at 29), but plaintiff fails to dispute that the market's assessment of GMAC's credit risk (and the corresponding likelihood of a GMAC bankruptcy) would be reflected in these prices.[8]  Nor does plaintiff dispute that the United States government made significant capital infusions into GMAC following the Exchange Offer.   (*See* GMAC Br., D.I. 71-3, Ex. F)   More important, and ultimately dispositive, is that plaintiff points to no allegations sufficient to satisfy the pleading burden articulated in recent Supreme Court decisions that an imminent GMAC bankruptcy is not merely "possible" but "plausible."   *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 557 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 1953-54 (2009).   Without a plausible theory under which his right to payment under the SmartNotes has been impaired by the Exchange Offer, plaintiff's TIA claim fails as a matter of law.

## V.     Counts IV And V Do Not State Viable Claims For Equitable Relief.

In support of his claims for equitable relief in Counts IV and V, plaintiff cites a 1937 state-court decision for the proposition that courts have broad powers to afford equitable relief. *Bonham v. Coe*, 292 N.Y.S. 423, 436 (N.Y. App. Div. 1937).   This general proposition provides no support for plaintiff's claims.   To be entitled to *any* relief – equitable or otherwise – a plaintiff must first state a viable cause of action.   As discussed above and in GMAC's opening

---

[8]   Plaintiff's sole basis for disputing the marked rise in the market price of his SmartNotes is a typographical error in one date on the horizontal axis of GMAC's price graphs. (Pl. Br. 29) GMAC also attached the underlying price data, the accuracy of which plaintiff does not dispute.   GMAC is attaching hereto corrected and updated price charts.   (Ex. A)

brief, plaintiff has not done so. Moreover, plaintiff has failed to meaningfully address the specific arguments and case law cited by GMAC demonstrating that the Complaint fails to state any legally sufficient basis for "equitable rescission" of the Exchange Offer (Count IV), or "equitable subordination" of the new notes issued pursuant to the offer (Count V).

### A.     Count IV Does Not State A Claim For Equitable Rescission.

Count IV seeks to have the Court "rescind the Exchange Offers and unwind any exchange of notes that has occurred thereto." (D.I. 65, ¶ 102) GMAC has stated four distinct grounds for dismissal of this claim, each supported by decisions applying New York law. Plaintiff ignores two of these arguments entirely, and addresses the other two only obliquely. And plaintiff neither addresses the authority cited by GMAC nor cites any other authority that supports the legal sufficiency of his claim for equitable rescission of the Exchange Offer.

Plaintiff does not address the dispositive argument that he has no standing to seek rescission of the contracts between GMAC and exchanging noteholders because he is neither party to, nor third-party beneficiary of, those contracts. *See, e.g., Parker & Waichman v. Napoli*, 815 N.Y.S.2d 71, 74 (N.Y. App. Div. 2006); *Romanoff v. Superior Career Inst., Inc.*, 415 N.Y.S.2d 457, 458 (N.Y. App. Div. 1979). Nor does plaintiff address the argument that he has failed to allege any of the grounds New York law would recognize as a basis for rescinding the Exchange Offer. *See Rosewood Apartments Corp. v. Perpignano*, 200 F. Supp. 2d 269, 272 (S.D.N.Y. 2002).

Plaintiff cites a 1910 decision, *Callanan v. Powers*, 92 N.E. 747 (N.Y. 1910), which he asserts is "directly on point." (D.I. 75 at 32-33) Plaintiff relies on *Callanan* to dispute defendants' argument that Count IV fails because the Complaint does not allege lack of an adequate remedy at law. But plaintiff ignores the much more recent decisions applying New York law stating that such an allegation is essential to avoid dismissal of a claim for equitable

17

rescission. *E.g.*, *Strategic Growth Int'l, Inc. v. RemoteMDx, Inc.*, 2008 WL 4179235, at *5 (S.D.N.Y. Sept. 10, 2008); *C3 Media & Mktg. Group, LLC v. Firstgate Internet, Inc.*, 419 F. Supp. 2d 419, 435-36 (S.D.N.Y. 2005); *Rosewood Apartments*, 200 F. Supp. 2d at 273, 276. Moreover, *Callanan* does not support plaintiff's claim in Count IV because the complaint in that case, unlike the claim here, was seeking to rescind a contract *to which plaintiff was party* – not a contract between the defendant and third parties.[9]

Finally, plaintiff sets up another straw man by arguing that GMAC is making "a motion to dismiss for failure to join indispensable parties under Rule 12(b)(7)." (D.I. 75 at 30) GMAC is not seeking dismissal on this ground, and the numerous cases plaintiff cites involving indispensable parties under Rule 19 (*id.* at 31) are therefore irrelevant.  The argument GMAC *does* make, based on authorities plaintiff fails to address, is that equitable rescission is not available under New York law if it would be impossible or impracticable for the court, through cancellation of the contract at issue, to restore the *status quo*. *E.g., New Shows, S.A. deC.V. v. Don King Prods., Inc.*, 210 F.3d 355, 2000 WL 354214, at *2 (2d Cir. Apr. 6, 2000); *Strategic Growth Int'l*, 2008 WL 4179235, at *5-6.  Plaintiff neither alleges nor attempts to explain how, as a practical matter, this court could unwind the Exchange Offers and nullify the multi-billion-dollar equity investment the U.S. Treasury made in GMAC based on consummation of that exchange.

---

[9]   *Callanan* stands for a proposition irrelevant to plaintiff's claim:  that rescission may be appropriate where the other party to the agreement repudiates the contract at issue and the damages cannot be ascertained with reasonable certainty. 92 N.E. at 752-53. Here, plaintiff does not allege that GMAC has repudiated its obligation under the SmartNotes, and he is not seeking rescission of any contract between GMAC and himself.

**B.      Count V Does Not State A Claim For Equitable Subordination.**

In Count V, plaintiff seeks subordination of the notes exchanged or sold pursuant to the Exchange Offer "to the priority status held before the Exchange Offers." (D.I. 65, ¶ 107) Plaintiff does not address GMAC's authorities supporting dismissal of Count V, or cite any authority he contends would support the validity of this claim. In particular, plaintiff does not address the authorities holding that equitable subordination is a bankruptcy remedy, which can be awarded only in a bankruptcy proceeding. *E.g.*, *In re Submicron Sys. Corp.*, 291 B.R. 314, 327 (Bankr. D. Del. 2003); *In re Poughkeepsie Hotel Assocs. Joint Venture*, 132 B.R. 287, 292 (Bankr. S.D.N.Y. 1991). GMAC is not in bankruptcy.

Plaintiff attempts to address GMAC's second argument – that he has also failed to plead the essential elements of a claim for equitable subordination because he does not allege any inequitable conduct by participants in the Exchange Offer. Ignoring the authority cited by GMAC, plaintiff argues that GMAC "misses the point about GMAC's inequitable conduct." (D.I. 75 at 30) But it is plaintiff who misses the point of the controlling Third Circuit authority on this issue. To state a claim of equitable subordination, and thereby subordinate the rights of GMAC bondholders who participated in the Exchange Offer, plaintiff was required to allege that *the allegedly preferred bondholders* "engaged in some type of inequitable conduct." *Citicorp Venture Capital, Ltd. v. Committee of Creditors Holding Unsecured Claims*, 160 F.3d 982, 986 (3d Cir. 1998). *See also Submicron*, 291 B.R. at 327-28 (specifying the kinds of actions *by the allegedly preferred creditors* that would satisfy the inequitable conduct requirement). Plaintiff has alleged *nothing* about the conduct of bondholders who participated in the Exchange Offer that could support a claim for equitable subordination of their rights.

**CONCLUSION**

For the reasons stated above and in GMAC's opening memorandum, each of the

claims against GMAC should be dismissed with prejudice.


Of Counsel

Robert J. Kopecky
Daniel E. Laytin
Jennifer W. Cowen
Rana Barakat
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL  60654
(312) 862-2000


Dated:  September 25, 2009

*Kelly E. Farnan*

Daniel A. Dreisbach (#2583)
dreisbach@rlf.com
Lisa A. Schmidt (#3019)
schmidt@rlf.com
Kelly E. Farnan (#4395)
farnan@rlf.com
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE  19801
(302) 651-7700

*Attorneys for Defendant GMAC LLC*

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2009, I electronically filed the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following and which has also been served as noted:

**BY HAND DELIVERY AND E-MAIL:**

Joel E. Friedlander
Sean M. Brennecke
Bouchard, Margules & Friedlander, P.A.
222 Delaware Avenue
Suite 1400
Wilmington, DE 19801

Kenneth J. Nachbar
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

I further certify that on September 25, 2009, the foregoing document was sent to the following non-registered participants in the manner indicated:

**BY E-MAIL:**

Jonathan Rosenberg
Abby F. Rudzin
Asher L. Rivner
O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036

Kelly E. Farnan (#4395)

RLF1-3415405-1